1   STEPHEN L. BERRY  (SB# 101576)
    stephenberry@paulhastings.com
2   BLAKE R. BERTAGNA (SB# 273069)
    blakebertagna@paulhastings.com
3   PAUL HASTINGS LLP
    695 Town Center Drive
4   Seventeenth Floor
    Costa Mesa, California  92626-1924
5   Telephone:  1(714) 668-6200
    Facsimile:  1(714) 979-1921
6
    Attorneys for Defendant
7   WALT DISNEY PARKS AND RESORTS
    U.S., INC.
8

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12  JOSE VALENZUELA and ERICA         CASE NO.
    CHO, individuals, on behalf of
13  themselves, and on  behalf of all persons   **NOTICE OF REMOVAL OF**
    similarly situated,                **CIVIL ACTION TO FEDERAL**
14                                     **COURT UNDER 28 U.S.C. §§**
                 Plaintiffs,           **1331,1332,1441, 1446, AND 1453;**
15                                     **DECLARATION OF MARIBETH**
        vs.                            **N. BISIENERE IN SUPPORT**
16                                     **THEREOF**
    WALT DISNEY PARKS AND
17  RESORTS U.S., INC.; and DOES 1
    through 50, Inclusive,
18
                 Defendants.
19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 91932497.2

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS JOSE VALENZUELA AND ERICA CHO, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT defendant Walt Disney Parks and Resorts U.S., Inc. ("Defendant" or "WDPR") hereby removes this action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California.  Defendant removes this action pursuant to 28 U.S.C. §§ 1331, 1332 (as amended by the Class Action Fairness Act of 2005 ["CAFA"], Pub. L. 109-2, section 4(a)), 1441(a), 1446, and 1453 for the following reasons:

**Pleadings, Process, and Orders**

1.     On September 22, 2017, plaintiffs Jose Valenzuela and Erica Cho ("Plaintiffs") filed an unverified proposed class action complaint in the Superior Court of the State of California for the County of Orange, entitled:  "*Jose Valenzuela and Erica Cho, individuals, on behalf of themselves, and on behalf of all persons similarly situated, Plaintiffs v. Walt Disney Parks and Resorts U.S., Inc., and Does 1 through 50, inclusive, Defendants,*" and designated as Case No. 30-2017-00945651-CU-OE-CXC (the "Complaint").  The Complaint alleges the following six purported causes of action against Defendant: (1) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.; (2) Failure to Pay Minimum Wages in Violation of Cal. Labor Code §§ 1194, 1197, and 1197.1; (3) Failure to Provide Required Meal Periods in Violation of Cal. Labor Code §§ 226.7, 512, and the Applicable IWC Wage Order; (4) Failure to Provide Required Rest Periods in Violation of Cal. Labor Code §§ 226.7, 512, and the Applicable

- 1 -

1  IWC Wage Order; (5) Failure to Provide Accurate Itemized Statements in Violation

2  of Cal. Labor Code § 226; and (6) Failure to Provide Wage When Due in Violation

3  of Cal. Labor Code §§ 201, 202, and 203.  A true and correct copy of the summons

4  and Complaint is attached hereto as Exhibit "A."

5

6       2.    On October 10, 2017, the summons and Complaint were served

7  on Defendant.  *See* Declaration of Maribeth N. Bisienere ("Bisienere Decl.") ¶ 2,

8  attached hereto as Exhibit "B."  The Complaint is the initial and only pleading

9  served on Defendant setting forth the claims for relief against Defendant upon

10  which this action may be removed.  *Id.*  Therefore, this notice of removal is being

11  timely filed pursuant to 28 U.S.C. section 1446(b).

12

13       3.    On November 6, 2017, Defendant answered the Complaint.  A

14  true and correct copy of the answer is attached hereto as Exhibit "C."

15

16       4.    The summons, Complaint, and answer to the Complaint

17  constitute all process, pleadings, and orders served on or by Defendant in this

18  action.

19       5.    In accordance with 28 U.S.C. section 1446(d), the undersigned

20  counsel certifies that by written notice a copy of this notice of removal and all

21  supporting papers were promptly served on Plaintiffs and filed with the clerk of the

22  Orange County Superior Court.  True and correct copies of the form of said notices

23  are attached hereto as Exhibits "D" and "E," respectively.  Therefore, all procedural

24  requirements under 28 U.S.C. section 1446 have been satisfied.

25

26       6.    Venue is proper in this district pursuant to 28 U.S.C. section

27  1441(a) because the superior court where the removed case was pending is located

28  within this district.

- 2 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1

## Federal Question Jurisdiction

2

3        7.      A state court action may be removed to federal court if the

4   federal court would have had original jurisdiction over the suit.  28 U.S.C. §

5   1441(a).  This is a civil action over which this Court has original jurisdiction under

6   28 U.S.C. section 1331.

7

8        **A.       The Alleged Violation Of Federal Law.**

9

10       8.      Under the "artful pleading" doctrine, a plaintiff may not avoid

11  federal jurisdiction simply by casting in state law terms a claim that actually is

12  based on federal law.  *See Sparta Surgical Corp. v. Nat'l Assoc., of Sec. Dealers*,

13  159 F.3d 1209, 1212 (9th Cir. 1998) (affirming removal because the state-law

14  claims were predicated upon NASD regulations issued pursuant to federal securities

15  law; "[A] plaintiff may not avoid federal jurisdiction by omitting from the

16  complaint federal law essential to his or her claim or by casting in state terms a

17  claim that can be made only under federal law.").  The artful pleading doctrine

18  requires courts to "delve beyond the face of the state court complaint and find

19  federal question jurisdiction" by "recharacterizing a plaintiff's state-law claim as a

20  federal claim." *Lippitt v. Raymond James Fin. Serv., Inc.*, 350 F.3d 1033, 1040

21  (9th Cir. 2003) (internal quotation marks and citation omitted).

22

23       9.      The artful pleading doctrine applies when "some substantial,

24  disputed question of federal law is a necessary element of one of the well-pleaded

25  state claims." *Franchise Tax Bd. of California*, 463 U.S. 1, 13 (1983); *Brennan v.*

26  *Sw. Airlines Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998) (removal jurisdiction upheld

27  when section 17200 claim rested on interpretation of federal tax code).

28

- 3 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

10.     The first cause of action in the Complaint contends that Defendant failed to pay Plaintiffs, and the class of persons they seek to represent, overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").  Specifically, Plaintiffs allege, in part:

a.     "DEFENDANT as a matter of company policy, practice and procedure, intentionally, knowingly and systematically failed to compensate PLAINTIFFS and the other members of the CALIFORNIA CLASS at the correct rate of pay for all federal overtime worked."  Complaint ¶ 13.

b.     "This uniform policy and practice of DEFENDANT was intended to purposefully avoid the payment of the correct federal overtime compensation as required by the FLSA which allowed DEFENDANT to illegally profit and gain an unfair advantage over competitors who complied with the law." *Id.*

c.     "DEFENDANT failed to provide PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS with complete and accurate wage statements which failed to show, among other things, . . . the correct federal overtime rates for overtime worked." *Id.* ¶ 16.

d.     "DEFENDANT also provided PLAINTIFFS with a pay stub that failed to accurately display PLAINTIFFS' . . . correct rates of federal overtime pay . . . ." *Id.* ¶ 18.

e.     "DEFENDANT, as a matter of company policy, practice and procedure . . . intentionally, knowingly, and willfully, engaged in a practice

- 4 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1   whereby DEFENDANT systematically . . . required employees to perform this

2   work and permitted or suffered to permit this federal overtime work." *Id.* ¶ 23.

3

4           f.     "DEFENDANT uniformly violated the rights of the

5   CALIFORNIA CLASS . . . by violating the [FLSA] . . . by failing to pay the correct

6   federal overtime wages to the PLAINTIFFS and the members of the CALIFORNIA

7   CLASS as legally required by the FLSA, and retaining the unpaid federal overtime

8   to the benefit of DEFENDANT." *Id.* ¶ 26(b).

9

10           g.     "The parties opposing the CALIFORNIA CLASS have

11   acted or refused to act on grounds generally applicable to the CALIFORNIA

12   CLASS, making appropriate class-wide relief with respect to the CALIFORNIA

13   CLASS as a whole in that DEFENDANT uniformly failed to pay all wages due.

14   Including the correct federal overtime rate, for all worked by the members of the

15   CALIFORNIA CLASS as required by law." *Id.* ¶ 28(b).

16

17           h.     "DEFENDANT violated the rights of the CALIFORNIA

18   LABOR SUB-CLASS . . . by failing to provide PLAINTIFFS and the members of

19   the CALIFORNIA LABOR SUB-CLASS with an accurate itemized statement in

20   writing showing all accurate and applicable federal overtime rates in effect during

21   the pay period and the corresponding amount of time worked at each federal

22   overtime rate by the employee." *Id.* ¶ 36(b).

23

24           i.     "By the conduct alleged herein, DEFENDANT has

25   engaged and continues to engage in a business practice which violated California

26   law, including but not limited to, . . . the Fair Labor Standards Act and federal

27   regulations promulgated thereunder . . . ." *Id.* ¶ 43.

28

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

LEGAL_US_W # 91932497.2

j.     "By the conduct alleged herein, DEFENDANT's practices were deceptive and fraudulent in that DEFENDANT's uniform policy and practice failed to pay PLAINTIFFS, and other members of the CALIFORNIA CLASS, Fair Labor Standards Act wages due for overtime worked as a result of failing to include the incentive compensation into their regular rates for purposing of computing federal overtime pay, failed to accurately record the applicable rate of all federal overtime worked . . . ." *Id.* ¶ 45.

k.     "By and through the unlawful and unfair business practices described herein, DEFENDANT has obtained valuable property, money and services from PLAINTIFFS and the other members of the CALIFORNIA CLASS, including earned wages for all federal overtime worked, and has deprived them of valuable rights and benefits guaranteed by law and contract, all to the detriment of these employees and to the benefit of DEFENDANT so as to allow DEFENDANT to unfairly compete against competitors who comply with the law." *Id.* ¶ 50.

l.     "PLAINTIFFS and the other members of the CALIFORNIA CLASS are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which DEFENDANT has acquired, or of which PLAINTIFFS and the other members of the CALIFORNIA CLASS have been deprived, by means of the above described unlawful and unfair business practices, including earned but unpaid wages for all federal overtime worked." *Id.* ¶ 52.

m.     "From time to time, DEFENDANT failed to provide PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS with complete and accurate wage statements which failed to show, among other

- 6 -

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

things, . . . the correct federal overtime rate for federal overtime worked . . . ." *Id.* ¶ 79.

n.      "DEFENDANT knowingly and intentionally fails to comply with Cal. Lab. Code § 226, causing injury and damages to PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS.  These damages include, but are not limited to, costs expended calculating the correct rates for the federal overtime worked and the amount of employment taxes which were not properly paid to state and federal tax authorities." *Id.* ¶ 80.

o.      "The employment of Plaintiff Cho and many CALIFORNIA LABOR SUB-CLASS Members terminated and DEFENDANT has not tendered payment of federal overtime wages and minimum wages due to these employees as required by law." *Id.* ¶ 87.

p.      Accordingly, Plaintiffs seek compensatory damages that include "compensatory damages for FLSA overtime compensation and minimum wage compensation." Prayer for Relief ¶ 2(B).

11.      Plaintiffs' first cause of action is based in substantial part on the FLSA but seeks restitution under section 17200 of California Business and Professions Code, which defines unfair competition as "any unlawful, unfair or fraudulent business act or practice."  As such, the Complaint presents a "substantial, disputed question of federal law" as an essential element of the first cause of action. *Franchise Tax Bd. of Cal.*, 463 U.S. at 13.  A long line of decisions recognize that a federal court may exercise jurisdiction over a section 17200 cause of action if a "substantial, disputed question of federal law is a necessary element" of the claim. *See, e.g., Havel v. SunAmerica Securities, Inc.*, 2006 WL 2917591, at *3 (N.D. Cal. Oct. 11, 2006) (denying a motion to remand and stating that Plaintiff's section

- 7 -

LEGAL_US_W # 91932497.2

1    17200 cause of action "states a substantial federal claim [] because it seeks to

2    enforce duties imposed by the FLSA to pay overtime compensation . . . and

3    depends on the assertion that defendants violated the FLSA"); *Brennan v.*

4    *Southwest Airlines*, 134 F.3d 1405, 1409 (9th Cir. 2004) (holding that

5    plaintiff's Section 17200 claim was inherently federal because it sought refund of

6    tax governed exclusively by federal law); *People ex rel. Lockyer v. Dynegy Power*

7    *Marketing*, 375 F.3d 831, 838 (9th Cir. 2004) (removal jurisdiction upheld for

8    section 17200 claim which "turn[ed], entirely, upon the defendant's compliance

9    with a federal [energy] regulation"); *Nat'l Credit Reporting Ass'n, Inc. v. Experian*

10   *Info. Sols., Inc.,* 2004 WL 1888769, at *3 (N.D. Cal. July 21, 2004) (removal

11   jurisdiction upheld where the plaintiff specifically referenced a violation of federal

12   antitrust laws in the complaint despite asserting a single state-law claim under

13   section 17200; "For a finding of 'unlawful' business practices under Section 17200,

14   there must first be resolution of federal antitrust laws, namely the Sherman Act

15   which counsel admits he is asserting.  Plaintiff's claim is merely a naked attempt to

16   enforce the Sherman Act in the guise of a Section 17200 claim and remedy.").

17

18        12.    Accordingly, this action arises under the laws of the United

19   States in that Plaintiffs' claims in substantial part are expressly premised on the

20   violation of a federal law, *i.e.*, the FLSA.

21

22        **B.    The LMRA Preempts The State-Law Claims.**

23

24        13.    State-law claims that require interpretation, analysis, and

25   application of collective bargaining agreements are preempted by the Labor

26   Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*  As the United

27   States Supreme Court explained in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202,

28   220 (1985): "[W]hen resolution of a state-law claim is substantially dependent

- 8 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Thus, any state claim where a defendant alleges LMRA preemption as a defense may be subject to complete preemption and be removed if the court must interpret the parties' collective bargaining agreement. *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. . . . The complete pre-emption [doctrine] is applied primarily in cases raising claims pre-empted by § 301 of the LMRA."); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement.").

14.     It is immaterial that Plaintiffs have avoided reference to the collective bargaining agreement ("CBA") that applied to them, or the LMRA in their Complaint. As stated above, under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by casting in state-law terms a claim that can be made only under federal law, which applies equally to foreclose plaintiffs from pleading around LMRA preemption. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement. . . . In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed to federal court and adjudicated under the appropriate federal law."), *overruled on other grounds by Allis-Chalmers v. Lueck*, 471 U.S. 202, 220 (1985);

- 9 -

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1   *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (affirming

2   summary judgment and rejecting argument of lack of jurisdiction in removed case;

3   "Mere omission of reference to LMRA s 301 in the complaint does not preclude

4   federal subject matter jurisdiction.").

5

6           15.     It is well established law that the LMRA preempts state-law

7   wage and hour claims. *See, e.g., Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063,

8   1066-67 (9th Cir. 2000) (holding that plaintiffs' class action for unpaid overtime

9   based on alleged violation of the California Labor Code was preempted because

10  resolution of the overtime claim required an interpretation of the CBA: "[B]ecause

11  the collective bargaining agreement must be interpreted to determine whether the

12  [employees' compensation agreement] provides for premium wage rates for

13  overtime work and, therefore, whether California's overtime exemption provision

14  applies . . . Plaintiffs' state law claim is preempted by the LMRA."); *Guinan v.

15  Dean Foods of Cal., Inc.*, 16 Fed. App'x 627, 629 (9th Cir. 2001) (holding that

16  claim for unpaid wages for alleged off-the-clock work in violation of the California

17  Labor Code was preempted by the LMRA because to determine what work was

18  compensable required interpretation of the CBA).

19

20          16.     The business records of WDPR show that it has employed Jose

21  Valenzuela on and off since November 10, 2012 as a Vacation Planner and Security

22  Host.  The business records of WDPR show that it employed Erica Cho in Main

23  Gate Reception from November 5, 2011 to January 23, 2017.   Bisienere Decl. ¶¶ 3-

24  4; *see also* Complaint ¶¶ 3-4.

25

26          17.     At all relevant times to this action, Defendant was and is a

27  company engaged in commerce and in an industry affecting commerce within the

28  meaning of sections 2(2), 2(6), and 2(7) of the National Labor Relations Act

- 10 -

1  ("NLRA") and Section 301, in an industry affecting commerce, as defined by the

2  LMRA, 29 U.S.C. §§ 141, *et seq.*; Bisienere Decl. ¶¶ 3-4.

3

4       18.    At all times during his employment, plaintiff Valenzuela was

5  represented by the Service Employees International Union – United Service

6  Workers West ("SEIU-USWW"), in his capacity as a Vacation Planner, or the

7  Independent Employee Service Association ("IESA," and collectively with SEIU-

8  USWW, the "Unions"), in his capacity as a Security Host.  At all times during her

9  employment, plaintiff Cho was represented by the SEIU-USWW.  The Unions are

10  labor organizations representing employees in an industry affecting commerce as

11  defined in the LMRA, 29 U.S.C. §§ 141, *et seq.*; Bisienere Decl. ¶¶ 3-4.

12

13       19.    At all relevant times, the terms and conditions of Plaintiffs'

14  employment were and are governed by a CBA entered into by and between one of

15  the Unions and Defendant.  Bisienere Decl. ¶¶ 3-4.  The CBAs are contracts

16  between an employer and a labor organization within the meaning of Section 301.

17  A true and correct copy of excerpts of the CBAs that governed and govern

18  Plaintiffs' employment during all relevant times are attached as Exhibits "B-1" and

19  "B-2" to the Bisienere Declaration

20

21       20.    The CBAs governed and govern the terms and conditions of

22  Plaintiffs' employment with Defendant, including but not limited to:  the scope of

23  Defendant's authority to schedule its workforce, Plaintiffs' representation by the

24  Union, Plaintiffs' hours of work, minimum and overtime wage rates, premium and

25  special wage rates, meal periods, rest breaks, manner of timekeeping, settlement of

26  grievances and disputes, as well as all other terms and conditions of Plaintiffs'

27  employment that are material to this action.  *See* Exhibits B-1 and B-2 (Section 7:

28  "Grievance & Arbitration Procedures"; Sections 10 and 11, respectively: "Wage

- 11 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1   Rates and Working Conditions," and Schedule A; Sections 11 and 12, respectively:
2   "Uniforms/Costumes"; Sections 15 and 16, respectively: "Pay Day"; Section 31:
3   "Four (4) Day, Ten (10) Hour Per Day Workweek"; Section 33: "Workday and
4   Workweek"; Section 37: "Job Classification and Wage Rate Schedules").
5   Therefore, the first cause of action (unfair competition), second cause of action
6   (failure to pay minimum wages), third cause of action (failure to provide meal
7   periods), and fourth cause of action (failure to provide rest periods) are all
8   preempted by the LMRA.
9
10      21.   Further, one of the primary theories underlying the Complaint, if
11  not the primary theory, is that Defendant failed to compensate its employees for
12  various preliminary and postliminary activities, including mandatory shuttle rides
13  and loss prevention inspections.  Complaint ¶¶ 9-10.  Whether a preliminary or
14  postliminary activity constitutes working time under provisions of a CBA has been
15  a central issue in numerous federal labor arbitrations for many years.  *See, e.g., In*
16  *re Combined Communications Corp. and Intern'tl Brotherhood of Elec. Workers,*
17  *Local 292,* 100 L.A. 17 (1992) (resolving whether CBA stating that "travel time
18  shall be treated as working time" required payment of time spent on overseas flight
19  as "working time"); *In re Jacksonville Shipyards and Intern'tl Brotherhood of*
20  *Boilermakers Local 805,* 76 L.A. 652 (1981) (determining whether certain tasks
21  preliminary to work constitute work time entitled to premium pay under CBA); *In*
22  *re Curtis Mathes Manufacturing Co. and United Furniture Workers Local 376,* 73
23  L.A. 103 (1979) (deciding whether 5 to 20 minute period while employees subject
24  to security procedures constitute "hours worked").
25
26      22.   Here, Article 33, section H, of the CBA for the SEIU-USWW,
27  and Article 12, Section E, of the CBA for the IESA, provide compensation for
28  preliminary and postliminary activities.  Therefore, the determination of whether

- 12 -

LEGAL_US_W # 91932497.2

the alleged time Plaintiffs contend that they and the members of the class they seek to represent spent engaging in these activities is covered by this provision or other provisions of the CBA is substantially dependent on analysis and interpretation of the CBA. All of Plaintiffs' causes of action will require significant interpretation of the CBA. Thus, section 301 preempts these causes of action. *See, e.g., Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) ("if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted").

**B.**  **Plaintiffs' Remaining Claims Are Also Removable**.

23.     In addition, pursuant to 28 U.S.C. section 1367(a), the Court has supplemental jurisdiction over the fifth cause of action (failure to provide accurate itemized wage statements) and sixth cause of action (failure to provide final wages) because they are substantially related to Plaintiffs' first, second, third, and fourth causes of action. *See* 28 U.S.C. § 1367(a). Consequently, considerations of judicial economy and fairness to litigants require that all of Plaintiffs' causes of actions against Defendant be litigated together in a single action. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

24.     Accordingly, this Court has federal question jurisdiction over the entire Complaint and removal is proper on this basis alone.

## CAFA Jurisdiction

25.     This action is also properly removed to this Court based on the rules for removal jurisdiction under CAFA. *See* 28 U.S.C. §§ 1332(d) and 1453.

- 13 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1    26.    CAFA provides that a district court has original jurisdiction of a

2    putative class action (and thus is removable to federal court) if:  (a) the proposed

3    class members number at least 100; (b) any member of a class of plaintiffs is a

4    citizen of a state different from that of any defendant; and (c) the amount in

5    controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§

6    1332(d)(2), (5)(B).

7

8    A.    **The Number Of Putative Class Members Is At Least 100**.

9

10   27.    Plaintiffs seeks to represent a class consisting of "all individuals

11   who are or previously were employed by DEFENDANT in California and classified

12   as non-exempt employees . . . at any time during the period beginning four (4) years

13   prior to the filing of this Complaint and ending on the date as determined by the

14   Court."  Complaint ¶ 21.  Plaintiffs further allege that the putative class "is so

15   numerous that joinder of all CALIFORNIA CLASS members is impracticable."  *Id.*

16   ¶ 25.  As defined by Plaintiffs, the proposed class consists of at least 30,000

17   employees.  Bisienere Decl. ¶ 5.   Accordingly, the proposed class numbers at least

18   100 individuals.

19

20   B.    **There Is Complete Diversity Between The Parties**.

21

22   28.    Under CAFA, Defendant need only show that "*any* member" of

23   the putative class "is a citizen of a State different from any defendant."  28 U.S.C. §

24   1332(d)(2)(A) (emphasis added).

25

26   29.    Plaintiffs are both residents of California on the date that this

27   action was commenced, and worked in Orange County, California during the period

28   relevant to his lawsuit.  Complaint ¶¶ 3-4; *see also* Bisienere Decl. ¶ 7.  Plaintiffs

- 14 -

1    are therefore citizens of the State of California.  *See* 28 U.S.C. § 1332(a)(1) (an

2    individual is a citizen of the state in which he or she is domiciled).

3

4         30.    A corporation is deemed to be a citizen of the state in which it is

5    incorporated and where it has its principal place of business.  28 U.S.C. §

6    1332(c)(1).

7

8         (a)    Defendant is a corporation organized and existing under the

9    laws of the State of Florida with its headquarters office located in Florida.  *See*

10   Bisienere Decl. ¶ 6.

11

12        (b)    A corporation's "principal place of business" for diversity

13   purposes is determined by the "nerve center test."  *Hertz Corp. v. Friend*, 130 S. Ct.

14   1181, 1192-93 (2010).  The "nerve center test" locates a corporation's principal

15   place of business in the state "where the corporation's high level officers direct,

16   control, and coordinate the corporation's activities."  *Id.* at 1186.  The Court also

17   stated that, "in practice [the nerve center] should normally be the place where the

18   corporation maintains its headquarters--provided that the headquarters is the actual

19   center of direction, control, and coordination."  *Id.* at 1192.

20

21        (c)    On and before the date this action was commenced, Defendant's

22   corporate headquarters, principal corporate offices, and its corporate executive

23   officers and the majority of its employees were located in Lake Buena Vista,

24   Florida.  Bisienere Decl. ¶ 6.  Defendant's corporate executive officers make or

25   approve all high-level decisions and provide oversight, direction, control and

26   coordination of the business and/or administrative activities of Defendant within the

27   scope of their executive management positions, and this occurs at and emanates

28

- 15 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

from Defendant's headquarters offices in Lake Buena Vista, Florida. *Id.* Thus, under the "nerve center" test, Defendant is a citizen of the State of Florida.

31.     Defendant is the only defendant named in this action and the presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

32.     Because at least one of the putative class members "is a citizen of a State different from any defendant," CAFA's minimum diversity of citizenship requirement is met.  28 U.S.C. § 1332(d)(2)(A).

## C.     The Amount In Controversy Exceeds $5 Million.

33.     Although Plaintiffs assert in the Complaint that the aggregate amount in controversy in this action does not exceed $5 million (Complaint ¶¶ 5, 31), the U.S. Supreme Court has instructed that such assertions are insufficient to defeat CAFA jurisdiction. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (purported waiver by plaintiff prior to class certification "does not resolve the amount-in controversy question in light of his inability to bind the rest of the class"). Rather, the Court must look beyond Plaintiffs' assertions and aggregate the value of the claim for each person who falls within Plaintiffs' class definition. *Id*

34.     A removing defendant need only establish that the amount in controversy exceeds $5 million by a preponderance of the evidence. *See Rodriguez v. AT&T Mobility Servs, LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (a "defendant seeking removal of a putative class action must demonstrate, by a preponderance of

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1   evidence, that the aggregate amount in controversy exceeds the jurisdictional

2   minimum").

3

4        35.    Under CAFA, the putative class members' claims are

5   aggregated to determine whether the amount in controversy exceeds the threshold

6   "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C.

7   §§ 1332(d)(2), (d)(6). While Defendant denies the validity of Plaintiffs' claims and

8   requests for relief thereon, the facial allegations in the Complaint and their claimed

9   damages are in excess of the jurisdictional minimum. *See Tripp v. Crossmark, Inc.*,

10  2013 WL 5496550, at *3 (N.D. Cal. Oct. 13, 2013) (finding defendant had properly

11  removed the action based on damages calculations of one cause of action and a

12  preliminary assessment of the remaining claims).

13

14       36.    For purposes of removal, the amount in controversy is simply

15  "an *estimate* of the total amount in dispute, not a prospective assessment of

16  defendant's liability." *Lewis v. Verizon Cmmcns., Inc.*, 627 F.3d 395, 400 (9th Cir.

17  2010) (emphasis added). The removing defendant's burden "is not 'daunting,'" and

18  "a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's

19  claims for damages.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141,

20  1148 (C.D. Cal. 2010) (quoting *Muniz v. Pilot Travel Centers LLC*, 2007 WL

21  1302504, at *2 (E.D. Cal. May 1, 2007)); *see also Korn v. Polo Ralph Lauren*

22  *Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what

23  amount is put 'in controversy' by the plaintiff's complaint, not what a defendant

24  will actually owe.").

25

26       37.    Moreover, under 28 U.S.C. section 1446(a), a notice of removal

27  need only contain a "short and plain statement of the grounds for removal." 28

28  U.S.C. § 1446(a). Based on this language, the United States Supreme Court has

- 17 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

held that a notice of removal need only include a *"plausible allegation* that the amount in controversy exceeds the jurisdictional threshold" – the notice "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551, 554 (2014) (emphasis added).

38.     Among other relief, Plaintiffs seek the following compensatory (money) damages:  Specifically, they seek "recovery of all unpaid wages," including minimum wages under Labor Code sections 1194, 1197, and 1197.1, and overtime wages under the FLSA and related penalties.  Complaint ¶¶ 50, 68; Prayer for Relief ¶¶ 1(C) and 2(B).  Plaintiffs also seek one hour of premium pay for each day them and the putative class members did not receive a compliant meal period and/or rest breaks.  Complaint ¶¶ 71, 75.  In addition, Plaintiffs seek to recover statutory penalties under California Labor Code section 203 for all putative class members who allegedly were not timely paid their final wages upon termination of employment in an amount equal to their daily wage times the number of days from their date of termination to the date they were paid all wages allegedly owed, up to 30 days, and statutory penalties under California Labor Code section 226(e) for the alleged failure to provide accurate itemized wage statements.  Complaint ¶¶ 31, 38; Prayer for Relief ¶2(C)-(D).  Plaintiffs also seek an award of attorneys' fees.  Complaint ¶¶ 80, 88; Prayer for Relief ¶ 3(C).

39.     With respect to the alleged failure to pay minimum wages, Plaintiffs asserts: "DEFENDANT maintained a *uniform* wage practice of paying PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS without regard to the correct amount of time they worked, including off the clock time tasks that the CALIFORNIA CLASS Members engaged in for DEFENDANT." Complaint ¶ 60 (emphasis added).

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

40.     At all material times, there have been at least 30,000 members in any one of the putative subclasses, as defined by the Complaint. Bisienere Decl., ¶ 5.

41.     The California minimum wage became $8 on January 1, 2008, increased to $9 on July1, 2014, increased to $10 on January 1, 2016, and most recently $10.50 on January 1, 2017.  At all material times, Plaintiffs and the putative class members have been paid no less than the California minimum wage. *Id.* ¶ 8.

42.     At all material times, employees in the proposed class have been paid wages on a weekly basis (i.e., 52 pay periods per year). *Id.* ¶ 9.

43.     Based on the conservative assumption of putative class members being unpaid for 5 minutes of compensable time per week at the minimum wage rate of $9,[1] the amount in controversy for the first claim alone exceeds $5 million, as follows:

- average hourly rate of pay = at least $9

- average additional wages owed per week per individual = $0.75

---

[1] Plaintiffs' own pay records demonstrate the conservative nature of this calculation based upon an hourly rate of $9.  Plaintiff Cho's hourly rate as of September 22, 2013 -- the start of the liability period for this action -- was $9.66 (which had increased to $10.56 by the time of her separation in January 2017).  Plaintiff Valenzuela's rate as of September 22, 2013 was $9.33 (and is currently $10.92). Bisienere Decl. ¶ 8.

- 19 -     NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

- assuming 4 weeks of vacation or other time off in the year (i.e., 4 pay periods), average additional wages owed per year per individual = $36

- total additional wages across 4-year class period per individual = $144

- total alleged unpaid wages owed to putative class = **$4,320,000** (30,000 members x $144 wages owed)

44.     Defendant's estimate of $0.75 per pay period (i.e., week) is conservative. *See Muniz v. Pilot Travel Ctrs., No.* 07-0325, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (finding that defendant need not "prove the plaintiff's claims" and assuming 100% violation rate when calculating amount in controversy); *Helm v. Alderwoods Grp., Inc.*, No. 08-1184, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) ("[D]efendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit . . . that a certain number of . . . violations did indeed occur.").

45.     Further, in determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. section 1332, a court may consider the attorneys' fees being sought. *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees are included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary); *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million). The Ninth Circuit has established a benchmark of 25% for approved attorneys' fees awards in class action cases. *See Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272

- 20 -

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT

1   (9th Cir. 1989).  Adding a 25% attorneys' fee award to only the amount being

2   sought by Plaintiff for unpaid minimum wages as noted above, an additional

3   **$1,080,000** would be added to the amount in controversy.

4

5        46.    Accordingly, although Defendant denies Plaintiffs' allegations

6   of wrongdoing and denies that Plaintiffs and putative class members or alleged

7   aggrieved employees can recover any monetary amount, the facial allegations in

8   Plaintiffs' Complaint establish that the total amount in controversy significantly

9   exceeds CAFA's minimum amount in controversy threshold of $5 million.

10

11       WHEREFORE, Defendant removes the above-entitled action from the

12  Superior Court of the State of California for the County of Orange to this Court.

13

14  DATED:  November 9, 2017         PAUL HASTINGS LLP

15

16           By: _____

17               BLAKE R. BERTAGNA

18           Attorneys for Defendant
            WALT DISNEY PARKS AND

19           RESORTS U.S., INC.

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION
TO FEDERAL COURT