## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |

| | |
|---|---|
| Title | **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al** |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:    [IN CHAMBERS] <u>Order Regarding Motion for Final Approval of Class Action Settlement and for Attorneys' Fees</u>**

Before the Court are two motions.

First, Plaintiffs Jose Valenzuela ("Valenzuela") and Erica Cho ("Cho") (together–"Plaintiffs") filed a motion for final approval of a proposed class action settlement ("Settlement").  Mot., Docket No. 69.  Second, Plaintiffs filed a motion for attorneys' fees, litigation expenses, and service awards.  Mot., Docket No. 67.

Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney") filed notices of non-opposition to both motions.  Non-Opp'n, Docket Nos. 68, 70.

For the following reasons, the Court **GRANTS** both motions.[1]

### I. BACKGROUND

#### A.    Allegations and Procedural History

The facts in this action are familiar to the parties and this Court.  The background is drawn from the Court's January 7, 2019 Order Regarding Plaintiffs' Motion for Class Certification.  <u>See</u> Docket No. 48.

---

[1] In its tentative order, the Court granted in part and denied in part both motions, indicating that it would not approve enhancement awards in excess of $7,500 nor attorneys' fees in excess of 30% of the Total Settlement Amount.  Subsequently, the parties jointly stipulated to limit the service awards to $7,500 each and the attorneys' fees to 30% of the Total Settlement Amount.  <u>See</u> Dkt. No. 71-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                 Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

Disney owns and operates theme parks and resorts, including water parks, golf
courses, merchandise and dining, entertainment, events and tours, shops, spas and fitness
centers, and sports and recreation facilities.  FAC, Docket No. 18 ¶ 2.  During the Class
Period, Disney generated all the facilities' wage statements provided to the Class
Members and uniformly paid them on a weekly basis.  Almand Depo., Docket No. 43-2,
Ex. 1: 39:15-19; 41:8-12.  Disney employed approximately 65,247 non-exempt
employees who worked at the Disneyland Resort.[2]  Responses, Docket No. 43-2, Ex. 8 at
3.

Class members were uniformly eligible to receive premium rates for hours worked
in certain roles in addition to their straight hourly pay.  Almand, Docket No. 43-2, Ex. 1,
42:16-25-44:14.  These premium pay roles include Disneyland Resort Lead ("DLR
Lead"), who act as a working lead in various positions and receive an additional $1.50
per hour; Main Entrance Screener ("ME Screener"), who performs bag checks and
receives an additional twenty-five cents per hour; and Vacation Planner, who sells theme
park tickets and receives an additional twenty cents per hour.  Id., 42:16-45:19; Keller
Depo., Docket No. 43-2, Ex. 2, 33:22-34:8; Pay Stub, Docket No. 43-2, Ex. 5,
WDPR000385.  The Master Services Agreement ("MSA") also provides for Shift
Differential premiums based on the beginning time of a shift.  MSA, Docket No. 43-2,
Ex. 3, 35.A.  Shifts beginning between 7:00 pm - 10:00 pm are paid a shift premium of
fifteen cents per hour and shifts beginning between 10:00 pm - 5:00 am receive a shift
premium of seventy-five cents per hour.  Id.  In addition, the MSA outlines which
additional premiums would be paid to Class Members for other jobs, such as working in a
stroller or wheelchair shop.  Id. at 51–52.

Disney had a uniform policy and procedure of using the "Rate in Effect" method to
calculate overtime compensation for its employees.  Keller Depo., Docket No. 46-1, Ex.
2, 45:15–24.  The Rate in Effect method paid premium work at time and a half with a
second, identical line item listing the same applicable premium code when the employee
worked overtime hours, as opposed to paying the time and a half under a separate
"Overtime" code.  Id. 45:25-46:20, 57:23-59:2.  Until April of 2017, Disney "initially
pa[id] using this rate in effect and in the following week a weighted average calculation
was performed with a correction in overtime pay being made if necessary."  Id. 45:21-22.
"Since April 2017 a weighted average calculation to the overtime rate is applied

[2] This number applies as of August 18, 2018.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |
|---|---|---|---|

| Title | Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al |
|---|---|

automatically in the same pay period as the rate in effect." Id. 45: 22-24.  Plaintiffs' first theory of liability is that Disney underpaid employees for their overtime wages by only paying employees overtime when the "Overtime" code is listed.  Mot., Docket No. 43-1 at 6.  Their second theory of liability challenges the pay periods that were not adjusted using the weighted average calculation and where premium payment codes were shown only in one line item.  Id. at 7–8.  Plaintiffs allege that Disney "unlawfully used Premium Payment wages paid as a credit against overtime wages that were not paid." Id. at 9.

Disney also had an automated meal period premium payment system that was uniformly applicable to all Class Members during the Class Period.  Id.; Keller Depo., Docket No. 46-1, Ex 2, 28:3-14.  Class Members would only receive a rest period premium if they informed their leader that they did not receive the break because employees do not clock in or out for rest breaks.  Keller Depo., Docket No. 46-1, Ex. 2, 30:16-23.  For the past five years in California, "the rest/meal paid line exclusively would be paid at the straight time hourly rate at the work being performed at that time, but the premium on this amount is included in the related premium line on the pay stub." Id. 85:2-8.  Plaintiffs' theory is that such a practice did not pay beyond the straight hourly pay for breaks missed while receiving Premium Payment wages.  Mot. Docket No. 43-1 at 11.  In addition, Plaintiffs allege that Disney's uniform system for paying rest/meal violations failed to include the rate for premiums of other jobs when the violation occurred on a day when Class Members were not earning Premium Payment wages.  Id. During the relevant period, the formatting and information on wage statements provided by Disney to all non-exempt employees has remained consistent with the exception of a message on the bottom of the pay stub that is occasionally updated.  Almand Depo., Docket No. 43-2, Ex. 1, 37:21-38:18.

On September 22, 2017, Plaintiffs filed a putative class action against Disney in the Superior Court for the County of Orange, alleging (1) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); (2) failure to pay minimum wages in violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1; (3) failure to provide required meal periods in violation of Cal. Lab. Code §§ 226.7 and 512 and the applicable IWC Wage Order; (4) failure to provide required rest periods in violation of Cal. Lab. Code §§ 226.7 and 512 and the applicable IWC Wage Order; (5) failure to provide accurate itemized employee wage statements in violation of Cal. Lab. Code § 226; and (6) failure to provide wages when due in violation of Cal. Lab. Code §§ 201, 202, and 203.  Notice, Docket No. 1-1, Ex. A.  Disney then removed the action to this court, and Plaintiffs filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

a First Amended Class Action Complaint ("FAC") alleging these same causes of action, as well as a seventh cause of action for violation of the Private Attorneys General Act ("PAGA") under Lab. Code §§ 2698, et seq.  Notice, Docket No. 1; FAC, Docket No. 18.

For the first, fifth, and sixth causes of action, Plaintiffs sought certification of the "Overtime Class," which is defined as:

> All individuals employed by Defendant in California as a non-exempt employee during the time period September 22, 2013 to the date of the Court's Order certifying the Overtime Class (the "Class Period"), who in addition to their straight time hourly wage rate received one or more premium payments in a workweek for the performance of additional responsibilities or for working during certain hours of operations ("Premium Payments") and who worked more than 40 hours in that workweek thereby entitling them to overtime compensation.

Mot., Docket No. 43-1 at 1.  Plaintiffs also sought to certify the following Meal/Rest Premium Class for the first, third, fourth, fifth, and sixth causes of action:

> All individuals employed by Defendant in California as a non-exempt employee during the Class Period who received a 1-hour payment from Defendant for a meal or rest period during the same pay period they received one or more Premium Payments.[3]

Mot., Docket No. 43-1 at 1.

Plaintiffs sought certification of these classes on a subset of claims pled in the FAC based on allegations that (1) Disney improperly calculated the regular rate of pay used in determining overtime pay for Plaintiffs and the putative class members, (2) Disney improperly calculated the amount of the additional one hour of pay provided to Plaintiffs and the putative class members who experienced a non-compliant meal or rest period; and (3) Disney issued itemized wage statements to Plaintiffs and the putative class members that allegedly failed to properly describe overtime pay associated with premium

---

[3] Note that there was no proposed Class for the second and seventh causes of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |
|---|---|---|---|

| Title | Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al |
|---|---|

pay work and the amount paid for not receiving a legally compliant meal or rest period.
Non-Opp'n, Docket No. 44 at 1.

The Court granted Plaintiffs' motion for class certification on January 7, 2019.  See
Order, Docket No. 48-1.

The parties filed cross-motions for summary judgment on April 1, 2019.  See
Docket Nos. 53, 54.

Plaintiffs now seek a Final Approval Order.  Mot., Docket No. 69.  Plaintiffs also
seek the Court's approval of attorneys' fees, cost, settlement administrator costs, and
class enhancement service awards.  Mot., Docket No. 67.

**B.    Summary of the Settlement**

**1.    The Settlement Class**

The Settlement Class consists of the Overtime Class and the Meal/Rest Premium
Class, which were certified by this Court in the Order dated January 7, 2019.  Docket No.
48.  The Class Period is September 22, 2013 through October 15, 2019.  Stipulation of
Settlement, Docket No. 63-2 § A(4).

The Overtime Class is defined as "all individuals employed by [Disney] in
California as a non-exempt employee during the Class Period, who in addition to their
straight time hourly wage rate received one or more premium payments in a workweek
for the performance of additional responsibilities or for working during certain hours of
operations ("Premium Payments") and who worked more than 40 hours in that
workweek."  Id. § A(5).

The Meal/Rest Premium Class is defined as "all individuals employed by [Disney]
in California as a non-exempt employee during the Class Period who received a 1-hour
payment from [Disney] for a meal or rest period during the same pay period they received
one or more Premium Payments." Id. § A(6).

**2.    Settlement Amount and Injunctive Relief**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |
|---|---|---|---|

| Title | **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al** |
|---|---|

Disney agrees to pay $2,000,000 (the "Total Settlement Amount") in consideration for the settlement and the release of claims.  Id. § C(15)(a).  The Total Settlement Amount consists of all payments to Class Members, plus (a) the Settlement Administrator's fees and expenses, (b) all attorneys' fees and costs, (c) the service payments to the Plaintiffs, (d) the payment to the State of California Labor Workforce and Development Agency ("LWDA") in connection with the claim for penalties under PAGA, and the employer's portion of FICA and FUTA.  Id.

**3.    Attorneys' Fees and Costs**

Class Counsel request that the Court award them reasonable attorneys' fees not to exceed 30% of the Total Settlement Amount, and for reimbursement of reasonable costs and expenses in an amount not to exceed $150,000.

**4.    Administrative Expenses and Service Awards**

Subject to Court approval, the Parties have agreed on KCC Class Action Services, LLC ("KCC") to administer the settlement in this action (as the "Settlement Administrator").  Id. § E(21).

**5.    Calculation of Settlement Payments**

The Net Settlement Proceeds will be divided into two portions, as follows: 50% of the Net Settlement Proceeds shall be allocated to the settlement of the Overtime Class claims (the "Overtime Class Net Settlement Proceeds") and the remaining 50% of the Net Settlement Proceeds shall be allocated to the settlement of the Meal/Rest Premium Class claims (the "Meal/Rest Premium Class Net Settlement Proceeds").  Stipulation of Settlement § C(15)(c).

The Individual Overtime Class Member Payment will be based on a ratio of the Overtime Class Total Weeks Worked to the Overtime Class Individual Weeks Worked, calculated by dividing the Overtime Class Individual Weeks Worked by the Overtime Class Total Weeks Worked and multiplying this result by the Overtime Class Net Settlement Proceeds.  Id. § C(15)(d).  The Individual Meal/Rest Premium Class Member Payment will be based on a ratio of the Meal/Rest Premium Class Total Weeks Worked to the Meal/Rest Premium Class Individual Weeks Worked, calculated by dividing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |
|---|---|---|---|

| Title | Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al |
|---|---|

Meal/Rest Premium Class Individual Weeks Worked by the Meal/Rest Premium Class Total Weeks Worked and multiplying this result by the Meal/Rest Premium Class Net Settlement Proceeds.  Id. § C(15)(e).

**6.     Release**

Upon final approval by the Court, each Class Member who has not opted-out shall be deemed to have fully finally, and forever released the Class Members' Released Parties from:

> any and all wage-and-hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, including, but not limited to, statutory, constitutional, contractual or common law claims for unpaid wages, damages, unreimbursed business expenses, civil and statutory penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief within the following categories of allegations in the Lawsuit and/or arising from those allegations related to the Overtime Class claims and the Meal/Rest Period Class claims: (a) all claims for unpaid overtime wages only as a result of improperly determining or calculating and/or miscalculating the regular rate of pay; (b) all claims for the failure to provide meal and/or rest periods in accordance with applicable law, including for non-payment of California Labor Code section 226.7 payments as a result of improperly determining or calculating and/or miscalculating the regular rate of pay or otherwise, and alleged non-payment of wages for meal periods worked and not taken; (c) failure to timely pay wages, both during employment and upon termination and/or resignation of employment; (d) failure to provide accurate itemized wage statements; and (e) civil and statutory penalties, including those recoverable under the PAGA, for any such claims, which arose during the Class Period, as defined in Section A, above ("Class Members' Released Claims").

Id. § D(19).

**7.     Notice**

A notice of pendency of class action, proposed settlement and hearing date for court approval ("Notice"), as approved by the Court, shall be sent by the Settlement Administrator to the Class Members, by first class mail, within 14 calendar days after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

receiving the Class Member list from Disney.  See Docket No. 63-2, Ex. 1; Id. § F(26).

The Notice will inform each Class Member of his or her total workweeks in either the Overtime Class or the Meal/Rest Premium Class or both classes, as applicable, and the Court-established deadlines for filing objections and the right to request exclusion. The Settlement Administrator shall use standard skip-tracing methods to obtain forwarding addresses of Class Members if any Notices are returned as undeliverable.  Id.

The Settlement Administrator will make reasonable efforts to ensure that the Notice is mailed to all Class Members. It will be conclusively presumed that a Class Member's Notice was received if the Notice has not been returned within 30 days of the original mailing of Notice to the Class Member.  Id. § F(27).

The number of workweeks for each Class Member will be determined using Disney's records. To the extent a Class Member disputes the information listed on his or her Notice, the Class Member may produce evidence to the Settlement Administrator showing such other weeks worked that he or she contends should be shown on the Notice. Each Class Member shall have 45 days from the original date of mailing the Notice in which to dispute the number of workweeks the Notice allocates to them during the Class Period. The Parties will meet and confer to evaluate the evidence submitted by the Class Member. If the Parties cannot agree, the dispute will be submitted to the Court whose decision as to which information should be applied will be binding.  Id. § F(30).

## 8.    Unpaid Funds, Opt-Out and Objection Process

The Notice shall provide that Class Members who wish to exclude themselves from the Class must submit to the Settlement Administrator a written statement requesting exclusion from the Class no later than 45 calendar days after the original mailing of the Notice ("Election Not to Participate in Settlement"). Such written request for exclusion must contain the name, address, and telephone number of the person requesting exclusion, be returned to the Settlement Administrator's address provided in the Notice, and be postmarked on or before the request for exclusion deadline.  Any Class Member who properly requests exclusion using this procedure will not be entitled to any payment from the Settlement and will not be bound by the Settlement or have any right to object, appeal or comment thereon. Class Members who fail to submit a valid and timely Election Not to Participate in Settlement on or before the request for exclusion deadline

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-1988 JVS (DFMx)                    Date   March 31, 2020

Title      **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

date shall be bound by all terms of the Settlement and any judgment or order of dismissal entered in the Lawsuit if the Settlement is finally approved by the Court, regardless of whether they ineffectively or untimely request exclusion
from the Settlement.  Id. § F(31).

There is no reversion of any portion of the Total Settlement Amount to Disney, and no claim form is required to be paid.  Id. § C(15)(a).  Class Members who do not opt-out of the Class by timely submitting an opt-out request shall be paid their share of the Net Settlement Proceeds based on the number of workweeks worked by the Class Member for Disney in California during the Class Period.  Id. § C(15)(d)-(e).

## 10.     Revocation of Agreement

If five percent or more of the Class Members submit a timely Election Not to Participate in Settlement, or if a number of Class Members whose share of the Net Settlement Proceeds represents five percent or more of the Net Settlement Proceeds validly elect not to participate in the Settlement, Disney shall have the option of canceling this Settlement and all actions taken in its furtherance will be null and void.  Id. § F (32). Disney must exercise this right within 14 calendar days after the Settlement Administrator notifies the Parties of the number of valid requests for exclusion received, which the Settlement Administrator must do within five calendar days after the deadline for submission of the Election Not to Participate in Settlement.  Id.  If Disney exercises its right to cancel the Settlement, it shall be responsible for payment of the portion of the Settlement Administrator's costs, if any, incurred through the date notice of cancellation is given.  Id.

## C.     Preliminary Approval

On November 4, 2019, the Court granted Plaintiffs' motion certifying the proposed Settlement Class, granted preliminary approval of the proposed settlement, directed dissemination of notice to the Class pursuant to the proposed Notice Plan, and appointing KCC as the Settlement Administrator for the dissemination of notice.  Order, Docket No. 66.

## D.     Notice and Objections

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

Since receiving preliminary approval, the Court-approved Notice Plan was successfully executed by the Settlement Administrator, KCC.  See generally Declaration of Susanna Webb ("Webb Decl."), Dkt. No. 69-3.

On December 6, 2019, KCC received from Disney a list of 41,019 persons.  Id. ¶ 2. On December 13, 2019, KCC caused the Notice to be printed and mailed to the 41,019 names and mailing addresses in the Class List.  Id. ¶ 3; Ex. A.

KCC has received 336 Notice Packets returned by the USPS with forwarding addresses. KCC immediately caused Notice Packets to be re-mailed to the forwarding addresses supplied by the USPS.  Id. ¶ 4.  As of January 27, 2020, KCC received 1467 Notice Packets returned by the USPS with undeliverable addresses.  Id. ¶ 5.  Through credit bureau and/or other public source databases, KCC performed address searches for these undeliverable Notice Packets and was able to find updated addresses for 744 Class Members.  Id.  KCC promptly re-mailed Notice Packets to the found new addresses.  Id.

On or about December 13, 2019, as set forth in the Notice, KCC established a website www.ValenzuelaSettlement.com dedicated to this matter to provide information to the Class Members and to answer frequently asked questions.  Id. ¶ 6.  On or before the same day, KCC established a toll-free telephone number to answer inquiries from Class Members.  Id. ¶ 7.

The postmark deadline for Class Members to request to be excluded from the class was January 27, 2020.  Id. ¶ 8.  As of the date of this declaration, KCC has received 44 timely and 4 late requests for exclusion.  Id.; Ex. B.

KCC received 0 objections to the settlement by January 27, 2020, the deadline to do so.  Id. ¶ 9.

KCC estimates its total cost of administration to be $126,000.00.  Id. ¶ 11.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements.  Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |
|---|---|---|---|

| Title | **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al** |
|---|---|

Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  Id.  Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable.  Id.

## III. DISCUSSION

### A.    Class Certification

The Court preliminarily certified the proposed Class in its prior order.   Order, Dkt. No. 66.  Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling.  Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

### B.    Approval of the Class Settlement

### 1.    The Fairness Factors Support Settlement Approval

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 959. For this analysis, a court typically considers the following factors: (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and the stage of the proceedings; (6) experience and views of counsel; (7) presence of a governmental participant; and (8) reaction of the class members to the proposed settlement.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

#### a.    Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Here, a number of defenses asserted by Disney presented serious threats to the claims of Plaintiffs and the other Class Members.  See Declaration of Norman Blumenthal ("Blumenthal Decl."), Docket No. 69-2 ¶ 8.  Both Plaintiffs and Class Counsel recognize the expense and length of a trial in this action against Defendant through possible appeals which could take at least another two to three years.  Id.  The Court finds that this factor weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

### b.    Amount Offered in the Proposed Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).  As a result, district courts should not judge the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators."  In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014) (quoting Officers for Justice, 688 F.2d at 625).  Instead, courts should consider the settlement in conjunction with "factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."  Id.

The Net Settlement Amount of $973,959.96 will be allocated pursuant to the terms of the settlement to those Class Members preliminarily approved for payment.  Webb Decl. ¶ 10.  Of that amount, $486,979.98 will be allocated to the Overtime Subclass, and $486,979.98 will be allocated to the Meal/Rest Premium Subclass.  Id.  Currently, the maximum and average class member allocations are estimated to be $90.15 and $23.77, respectively.  Id.

Plaintiffs' accounting expert, DM&A, calculated the alleged maximum recovery for the Class at trial if they prevailed as part of Plaintiffs' expert report.  Blumenthal Decl. ¶ 8.  Using the class data, based upon the expert analysis, Plaintiffs calculated that the maximum damages for the overtime claim based upon the miscalculation of the regular rate was $3,419,876.70 and the underpaid meal/rest premium damages were $220,065.10.  Id.  As a result, the total damage valuation, not counting potential civil and statutory penalties, was $3,638,941.  Id.  Therefore, the settlement of $2,000,000, before deductions, represents more than half of the actual damages for the Class, assuming these amounts could be proven in full at trial.  Id.

Since Plaintiffs could risk losing on the merits and recovering less than this amount should litigation continue, the Court finds that this factor weighs in favor of final approval.

### c.    Extent of Discovery Completed and the Stage of the Proceedings

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.  The more the discovery [is] completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'"  In re Toys R Us, 295 F.R.D. at 454 (C.D. Cal. 2014) (internal quotations omitted) (quoting Young v. Polo Retail, LLC, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007)).  Likewise, mediation suggests that the parties know their relative strengths and weaknesses.  See id. at 455.

This factor weighs in favor of final approval.  The Court finds that the parties have engaged in an appropriate amount of discovery, suggesting that the settlement is fair, reasonable, and adequate.  See Blumenthal Decl. ¶ 6.

### d.    Experience and Views of Counsel

Both parties in this action were represented by competent counsel.  See Blumenthal Decl. ¶¶ 2, 6.  Therefore, this factor also supports final approval.

### e.    Reaction of the Class Members to the Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Nat'l Rural Telecomms., 221 F.R.D. at 529 (citations omitted); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.").

Following the Court's preliminary approval of the Settlement, no objections were filed.  Webb Decl. ¶ 9.

The Court finds that the reaction by Class Members to the Settlement has been positive.  See Churchill, 361 F.3d at 577 (affirming district court's approval of settlement where 500 of 90,000 class members opted out (.56%) and 45 class members objected to the settlement (.05%)).  Accordingly, the absence of any objections weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

---

Overall, the weight of the factors supports the Court's conclusion that the Settlement is fair, reasonable, and adequate.

**C.    Notice**

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks and citation omitted). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]" Id. "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Lane, 696 F.3d at 826.

The Notice approved by the Court and implemented by KCC satisfies the applicable standard. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

**D.    Class Representative Incentive Award**

Courts have discretion to issue incentive awards to class representatives. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. An unreasonable incentive award may indicate that a settlement was reached through fraud of collusion. Staton, 327 F.3d at 975.

Courts evaluate incentive awards relative to named plaintiff's efforts, considering

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |

| | |
|---|---|
| Title | **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al** |

"the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).  Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

The proposed Settlement provides service awards of $10,000 each to Plaintiffs Erica Cho and Jose Valenzuela.  Declaration of Erica Cho ("Cho Decl."), Dkt. No. 67-5 ¶ 13; Declaration of Jose Valenzuela ("Valenzuela Decl."), Dkt. No. 67-4 ¶ 11.

Plaintiffs submitted evidence that they spent time and effort assisting in the prosecution of the action.  Cho Decl. ¶¶ 7-9; Valenzuela Decl. ¶¶ 7-9; see also Nordrehaug Decl. ¶ 10.  See Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014).  Cho and Valenzuela estimate that they each spent between 60 to 80 hours assisting with this action.  Cho Decl. ¶ 9; Valenzuela Decl. ¶ 9.

The Court declines to approve any award in excess of $7,500 in light of the fact that the average recovery for members of each subclass is $90.15 and $23.71.  Even at this reduced rate, Cho and Valenzuela would receive approximately $100 per hour for their time.   Plaintiffs have stipulated to a limit of $7,500 each in service awards.  Dkt. No. 71-1.

**E.     Attorneys' Fees and Costs**

**1.     Fees**

A court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement.  Fed. R. Civ. P. 23(h).  Even when parties have agreed to a fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable."  In re Bluetooth, 654 F.3d at 941.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-1988 JVS (DFMx) | Date | March 31, 2020 |

| | |
|---|---|
| Title | **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al** |

In the Ninth Circuit, there are two methods of determining attorneys' fees: the percentage of the benefit method and the lodestar method.  Under the percentage of the benefit method, the Court awards attorneys' fees equal to a percentage of the total value provided or available to the Class.  In re Hyundai and Kia Fuel Economy Litig., -- F.3d --, 2019 WL 2376831, at *16 (June 6, 2019).  In comparison, under the lodestar method, the Court will multiply the number of attorney hours incurred by a reasonable hourly rate. Id.  The Court may then raise or lower the lodestar based on several factors.  Id.; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975); Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n. 7.  Courts routinely cross-check their "percentage of the fund" calculation with the lodestar method to ensure that class counsel is not overcompensated.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

Class Counsel originally sought an award of $666,666 for attorneys' fees, which is one-third of the Total Settlement Amount.  Nordrehaug Decl. ¶¶ 5-6; Matern Decl. ¶ 13. They have since stipulated to a limit of 30% of the Total Settlement Amount.  Dkt. No. 71-1.

### a.    Percentage of the Fund

In the Ninth Circuit, the benchmark for fee awards in common fund cases is 25% of the common fund.  In re Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").  The percentage may be adjusted according to several factors, including: (1) the results achieved; (2) the risk involved in undertaking the litigation; (3) the generation of benefits beyond the cash settlement fund; (4) the market rate for services; (5) the contingent nature of the fee; (6) the financial burden to counsel; (7) the skill required; (8) the quality of the work; and (9) the awards in similar cases.  Vizcaino, 290 F.3d at 1048–49; Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Here, Plaintiffs' counsel seek an award of $666,666.  This amount is above the Ninth Circuit's established benchmark.  "[C]ourts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions"  In re Heritage Bond Litig., 2005 WL 1594403, at *19, 19 n.14  (C.D. Cal. June 10, 2005) (collecting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

cases).

### i.    Results Achieved

"The result achieved is a significant factor to be considered in making a fee award."  Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)); Vizcaino, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance."); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.").

The Court found that the settlement is fair, adequate, and reasonable.  The Court finds that, overall, the result weighs in favor of the requested award.

### ii.    Risks Involved

Another significant factor to be considered in determining attorney fees is the risk that counsel took of "not recovering at all, particularly [in] a case involving complicated legal issues."  In re Omnivision Techs., 559 F. Supp. 2d 1046–47; Vizcaino, 290 F.3d at 1048; In re Heritage Bond, No. 02-ML-1475, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper fee award.").

As explained above, Plaintiffs undertook significant risks in pursuing this litigation.  Nordrehaug Decl. ¶ 4; Matern Decl. ¶¶ 17-18.  Therefore, this factor supports the requested award.

### iii.    Skill of Counsel and Contingent Fees

"The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained."  Id., at *12 (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 149 (E.D. Pa. 2000)).  Class Counsel has competently litigated this case, diligently investigating and developing the claims.  The settlement was not reached lightly.  Cf. Navarro v. Servisair, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

Class Counsel have significant experience in these types of class actions. Nordrehaug Decl. ¶ 2; Matern Decl. ¶¶ 11-12.  Therefore, this factor supports the requested award.

Attorneys also are entitled to a larger fee award when their compensation is contingent in nature, as here.  Nordrehaug Decl. ¶ 6; see Vizcaino, 290 F.3d at 1048–50; see also In re Omnivision Techs., 559 F. Supp. 2d at 1047.  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases."  In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994).  Therefore, this factor also supports the requested award.

> *iv.    Results in Similar Cases*

The requested fee is generally in line with awards made in similar sized common fund class actions litigated in California. See, e.g., Vasquez, 266 F.R.D. at 492 (detailing cases awarding one-third of common fund and awarding counsel one-third of common fund in case with total recovery of $300,000); see also Craft v. Cty. of San Bernardino, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that cases of under $10 million often result in fees about 25%).  Therefore, this factor supports the requested award.

> *v.    Reaction of the Class*

The Court may also consider the reaction of the class to the proposed fee award.  In re Omnivision Techs., 559 F. Supp. 2d at 1048; In re Heritage Bond, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.").

As noted above, there were no objections.  Webb Decl. ¶ 9.  Therefore, this factor supports the requested award.

In sum, the Court finds that the factors in this case support an award above the Ninth Circuit's 25% percent bench mark.  However, the Court is concerned about the fact that an award of $666,666 would approach the estimated actual recovery of both subclasses: $973,959.96.  The Court will next perform a lodestar cross-check to ensure the reasonableness of the percentage award.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

### b.    Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050; In re Omnivision Techs., 559 F. Supp. 2d at 1048. As noted above, the Ninth Circuit encourages courts to cross-check the reasonableness of a fee award determined using the percentage method with the lodestar method.

"The first step in the lodestar analysis requires the district court to determine a reasonable hourly rate for the fee applicant's services. This determination [involves] examining the prevailing market rates in the relevant community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) (internal quotation marks and citation omitted); see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987). The fee applicant may provide affidavits from the attorneys who worked on the present case, as well as affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. See Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 262 (N.D. Cal. 2015); see also Parkinson v. Hyundai Motor Am., 796 F. Supp.2d 1160, 1172 (C.D. Cal. 2010) ("Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates.").

The contingent nature of the case supports the fee award here. Attorneys are entitled to a larger fee award when their compensation is contingent in nature. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); see also In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for . . . contingency cases." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who may not otherwise be able to afford it. Id. Here, Class Counsel faced significant risk from contingent fee litigation because they expended significant time and money without guaranteed payment. Matern Decl. ¶ 16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

Class Counsel contend that the hourly rates for staff at Blumenthal Nordrehaug Bhowmik De Blouw LLP are as follows: Partner Attorneys from $495 to $795, Associate Attorneys from $475 to $575, Paralegals from $250 to $275.  Nordrehaug Decl. ¶ 8.  At the Matern Law Group, the attorneys involved in this matter have hourly rates of $475, $625, $675, and $950.  Matern Decl. ¶ 20.

Blumenthal Nordrehaug's present lodestar calculates to $524,828.75.  Nordrehaug Decl. ¶ 8.  A proposed fee award therefore reflects a multiplier of 1.27.  Id.  Matern Law Group's lodestar calculates to $107.242.50.  Matern Decl. ¶ 14.

Next, the Court examines whether the number of hours class counsel expended on the litigation was reasonable.  To calculate the Lodestar, Class Counsel reviewed and included their timekeeping records.  See Nordrehaug Decl. ¶ 8, Ex. 3; Matern Decl. ¶¶ 19-20.  The Court finds that the number of hours expended was reasonable.

On balance, the Court finds that awarding any amount in excessive of 30% of the Settlement Amount is not warranted. Class Counsel now stipulate to an award of 30% of the Total Settlement Amount.  Dkt. No. 71-1.

**2.    Costs**

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  In re Omnivision Techs., 559 F. Supp. 2d at 1048.

Class Counsel incurred $124,781.33 in case-related costs.  Nordrehaug Decl.¶ 9, Ex. 3; Matern Decl. ¶ 24.  Class Counsel provide adequate documentation of these expenses.  Id.; Ex. 3.  Therefore, the Court awards $124,781.33 for reimbursement of reasonable expenses.

The Court also finds it reasonable to grant the $126,000.00 requested for KCC, the Settlement Administrator.

**IV. Conclusion**

For the foregoing reasons, the Court **GRANTS** the motion for final approval of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 17-1988 JVS (DFMx)                    Date    March 31, 2020

Title    **Jose Valenzuela, et al  v. Walt Disney Parks & Resorts U.S., Inc. et al**

class settlement and the $15,000 in Class Representative incentive awards for Plaintiffs Valenzuela and Cho.  The Court **GRANTS** the motion for attorneys' fees, **GRANTS** the award for $124,781.33 in case-related costs, and **GRANTS** the $126,000.00 requested for KCC, the Settlement Administrator.

**IT IS SO ORDERED.**

                                                                                                :            0

Initials of Preparer            lmb